**In re ADOPTION OF Baby Girl HUDNALL.**

[Cite as *In re Adoption of Baby Girl Hudnall* (1991), 71 Ohio App.3d 376.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–820.

Decided March 19, 1991.

*Michael P. Cleary,* for adoptive parents.

*James M. Lemieux,* for appellant.

*Albers & Albers* and *James S. Albers,* for appellee.

KLINE, Judge.

Appellant appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling his objections to the adoption of Baby Girl Hudnall.

Baby Hudnall was born January 27, 1989, to Amy Hudnall, an unwed mother. Pursuant to previous arrangements entered into with appellee, Gentle Care Adoption Services, Inc., Amy Hudnall permanently surrendered her child on January 31, 1989, to appellee for the purpose of placing her child for adoption. On that same day, appellee placed the child with prospective adoptive parents.

Subsequently, on March 13, 1989, appellant, Robert Scott Bell, filed objections to the proposed adoption with the Ashtabula County Probate Court. Appellant alleged in his objections that, for all pertinent times, he was an enlisted service man in the United States Marine Corps and discharged March 3, 1989. Appellant further alleged that he was the father of a baby born in March 1987 to Amy Hudnall and that Amy Hudnall had advised appellant that he was also the father of Baby Girl Hudnall. Appellant alleged that, although appellee knew he was the father of the baby and that appellant was stationed at Camp Pendleton, California, appellee made no effort to obtain appellant's consent to the adoption. Appellant alleged that he would under no circumstances consent to the adoption of his daughter and demanded that appellee return the baby to him. Appellant requested that the Ashtabula County Probate Court order appellee to return the baby to him.

Appellee initiated the instant cause on March 30, 1989 in the Franklin County Probate Court by filing the petition of the adoptive parents for an order confirming the adoption. Appellee then moved the Ashtabula County Probate Court to transfer the pending objections of appellant to the Franklin County Probate Court for disposition of all issues. On July 3, 1989, the Ashtabula County Probate Court transferred the matter pending before it to the Franklin County Probate Court pursuant to R.C. 3107.04(B).

Also pending before the Ashtabula County Probate Court and transferred to the Franklin County Probate Court was a notice of withdrawal of consent filed by Amy Hudnall. Following an order of the Franklin County Probate Court directing the parties to file trial memoranda regarding the birth mother's withdrawal of consent, only appellee filed a trial memoranda opposing the withdrawal. The probate court entered a judgment on September 15, 1989, dismissing Amy Hudnall's withdrawal of consent. The probate court entered a final decree of adoption on October 16, 1989.

Subsequently, on November 27, 1989, appellant requested the probate court to order a hearing on his previously filed objections opposing the adoption. Following consideration of trial briefs filed by the parties in February 1990, the probate court overruled as untimely appellant's objections to the adoption. The trial court determined that appellant failed to comply with the filing provisions of R.C. 3107.06(F)(4), thus obviating the need for appellant's

consent as putative father. The matter was reduced to judgment on June 26, 1990 and this appeal followed.

On appeal, appellant sets forth the following two assignments of error:

"The Trial Judge was clearly erroneous in finding that [Chapter] 3107 imposed no duty on Gentle Care to provide notice pursuant to the Ohio Rules of Civil Procedure before concluding that petitioner Robert Scott Bell's rights as a natural father had been forfeited (Argument I).

"The Trial Judge was clearly erroneous in granting a final decree of adoption before conducting a hearing on petitioner Robert Scott Bell's objections, as natural father, to the adoption (Argument II)."

Under his initial assignment of error, appellant contends that the probate court denied appellant due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States when it granted the adoption of Baby Hudnall without appellant's consent. More particularly, appellant contends that he was entitled to notice of the adoption since it is uncontested that he is the natural father. Appellant concludes that absent notice of the adoption proceedings, the probate court denied him due process of law when it terminated his parental rights without an opportunity to be heard.

Appellant's argument appears to proceed on the erroneous presumption that, because his status as the natural father of Baby Hudnall was uncontested, he possessed the right to withhold consent to the adoption and was entitled to notice and a hearing regarding the adoption. However, R.C. Chapter 3107 clearly evinces a legislative intent to distinguish between fathers and putative fathers. *In re Adoption of Toth* (1986), 33 Ohio App.3d 265, 267, 515 N.E.2d 950, 952. R.C. 3107.06(B) defines a father of a minor as one who is married to the mother when the minor is conceived, one who is a father by adoption, or one who has been established to be the father by legal proceeding. The putative father, on the other hand, is defined by R.C. 3107.06(F) as one who:

"(1) Is alleged to be the father of the minor in proceedings brought under sections 3111.01 to 3111.19 of the Revised Code at any time before the placement of the minor in the home of the petitioner;

"(2) Has acknowledged the child in a writing sworn to before a notary public at any time before the placement of the minor in the home of the petitioner;

"(3) Has signed the birth certificate of the child as an informant as provided in section 3705.09 of the Revised Code;

"(4) Has filed an objection to the adoption with the agency having custody of the minor or the department of human services at any time before the placement of the minor in the home of the petitioner, or with the probate court

or the department of human services within thirty days of the filing of a petition to adopt the minor or its placement in the home of the petitioner, whichever occurs first." Thus, the General Assembly created in R.C. Chapter 3107 two classes of fathers who must consent to the adoption of their minor children. The fact that the parties do not contest appellant's status as the natural father of Baby Hudnall does not accord appellant either legal status described in R.C. 3107.06(B) or (F).

■ In this case, there is no evidence that Baby Hudnall was conceived or born while appellant was married to Amy Hudnall, that Baby Hudnall was his child by adoption, or that Baby Hudnall had been established to be his child by virtue of a paternity proceeding commenced under R.C. Chapter 3111. Thus, appellant is not required to give his consent pursuant to the terms of R.C. 3107.06(B). As to appellant's status as the putative father of Baby Hudnall, there is likewise no evidence that any paternity proceeding had been commenced pursuant to R.C. Chapter 3111 prior to the placement of Baby Hudnall in the home of the petitioning adoptive parents, that appellant acknowledged the child in a sworn notarized writing prior to placement, or that he signed Baby Hudnall's birth certificate in accordance with R.C. 3705.14.

Accordingly, appellant falls within that class of putative fathers protected by R.C. 3107.06(F)(4). This class of fathers is required to consent to the adoption of their minor children only if, subject to the provisions of R.C. 3107.07(B), the father has taken steps to assert his interest in the minor by filing an objection to the adoption with the agency having custody of the minor prior to placement in the home of prospective parents, or by filing such objection with the probate court or department of human services within thirty days of the filing of a petition to adopt the child or the child's placement in the home of the prospective adoptive parent, whichever occurs first. The probate court found, and there is no evidence to suggest otherwise, that appellant failed to timely file his objection to the adoption of Baby Hudnall within thirty days of the January 31, 1989 placement of the baby in the home of the adoptive parents. Rather, it is undisputed that appellant's objection to the adoption was filed on March 13, 1989, forty-three days after the placement of Baby Hudnall. Clearly, the objection was untimely.

To the extent appellant's argument is predicated upon a due process claim to notice of the placement so as to alert appellant that the thirty-day period has commenced to run, this court is unable to discern a due process violation in the context of this case. As this court understands appellant's argument, appellant does not challenge the constitutionality of R.C. 3107.06(F)(4) as violative of his substantive right as a natural father to assert parental rights. Cf. *Lehr v. Robertson* (1983), 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614.

Clearly, R.C. 3107.06(F)(4) affords appellant the opportunity to assert his parental interests. Neither does this court find appellant's challenge on due process grounds to be an assertion that R.C. 3107.06(F)(4) violates procedural due process on its face. Clearly, the General Assembly has enacted a sufficient method which allows putative fathers to assert their parental interests through the filing of an objection to the placement or proposed adoption of their minor children. Cf. *Lehr, supra,* at 263–264, 103 S.Ct. at 2994–2995, 77 L.Ed.2d at 628.

Rather, appellant's due process argument appears to challenge the validity of R.C. 3107.06(F)(4) under the facts of this case. Appellant suggests that, because he was stationed as a Marine in California at the time of the child's birth and subsequent placement on January 31, 1989 and because appellee knew that appellant was the natural father and of his location, he was entitled to notice of the proposed adoption or placement. However, such " * * * argument amounts to nothing more than an indirect attack on the notice provisions of the * * * statute. The legitimate state interests in facilitating the adoption of young children and having the adoption proceeding completed expeditiously that underlie the entire statutory scheme also justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights. * * * " [1] *Lehr, supra,* at 265, 103 S.Ct. at 2995, 77 L.Ed.2d at 629. Since there is no evidence in the record which demonstrates that appellant was prevented from filing an objection to the placement of Baby Hudnall either because of fraud or legal disability, this court concludes that appellant was afforded all the process which was due under the statute. The trial court did not err in finding appellant's objection to be untimely. The first assignment of error is overruled.

Appellant asserts by way of his second assignment of error that the trial court erred in granting a final decree of adoption prior to hearing appellant's objections to the adoption. We find such argument to be without merit.

First, even if the procedure utilized by the probate court was erroneous in granting the adoption prior to hearing appellant's objections, such error was not prejudicial since the trial court heard appellant's objections subsequent to the adoption and found them to be untimely. Moreover, as noted

---

1. No argument has been made either in this court or in the probate court regarding appellant's ability to toll the thirty-day period required in R.C. 3107.06(F)(4) pursuant to the provisions of the Soldiers and Sailors Relief Act, Section 525, Title 50, U.S.Code. Accordingly, this court expresses no opinion as to the effect this Act may have in this case.

under the first assignment of error, because appellant's objections were untimely, the trial court was not required to consider his objections in any event. The second assignment of error is overruled.

Having overruled both assignments of error, the judgment of the probate court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and REILLY, J., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting and hearing the appeal pursuant to active duty prior to his retirement, and assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution, subsequent to his retirement.

ROGER L. KLINE, J., of the Pickaway County Court of Common Pleas, sitting by assignment.